## A95A2603. NELSON v. JONES.
## A95A2604. TRAVELERS INDEMNITY COMPANY OF AMERICA v. JONES.
### (469 SE2d 863)

ANDREWS, Judge.

In Case Nos. A95A2603 and A95A2604, Nelson, defendant below, and Travelers Indemnity Company of America (Travelers), plaintiff Jones' underinsured motorist (UM) carrier, respectively, appeal from the trial court's award of partial summary judgment to Jones in his personal injury suit. Nelson additionally appeals from the trial court's granting of Jones' motion for attorney fees and expenses. We reverse the grant of summary judgment.

After suit was filed, discovery conducted, and a pretrial order entered on November 29, 1994, Nelson filed a motion for summary judgment on February 10, 1995, contending that Jones' attorney, Dwyer, and Houlihan, the adjuster for Nelson's insurer, State Farm, had agreed to settle for $50,000, Nelson's liability policy limit, and that the settlement was binding on Jones. Travelers, Jones' UM carrier, joined that motion.

1. On September 17, 1992, Jones was seriously injured when struck from behind by Nelson while attempting to exit Georgia 400. While Nelson had only $50,000 liability coverage, Jones had $500,000 in UM coverage. Attorney Dwyer represented Jones and, on August 25, 1994, filed suit against Nelson as well as sending State Farm and Nelson a letter making "demand for his personal injury claim for injuries arising out of the incident on September 17, 1992, for the sum of $50,000.00. This demand is submitted and is based upon the understanding that $50,000.00 is your insured's policy limits as to personal injury." It further stated that it was made pursuant to OCGA § 51-12-14, was open for 30 days, and that "given the magnitude of the injuries, a verdict would very well be obtained in excess of the policy coverage. In the event of a verdict in excess of the policy coverage, we will contend that State Farm Mutual Automobile Insurance Company is liable for any excess because of its failure to settle the claim within its policy limits of insurance *(Southern General v. Holt,* 200 Ga. App. 759[, 760 (2) (409 SE2d 852) (1991)])."

2. Nelson's second enumeration and part of Travelers' first enumeration contend that the trial court erred in sua sponte granting partial summary judgment to Jones after Nelson and Travelers had filed motions for summary judgment. However, neither brief argues the issue of the court's authority to sua sponte grant summary judg-

ment to a party who has not filed a motion and this issue has been waived. *Spivey v. Safeway Ins. Co.*, 210 Ga. App. 775, 776 (1) (437 SE2d 641) (1993); Court of Appeals Rule 27 (c) (2). See generally *Covington v. Countryside Investment Co.*, 263 Ga. 125, 127 (3) (428 SE2d 562) (1993).

3. Nelson's first enumeration is that the court erred in denying his motion for summary judgment because there was no material fact issue or legal issue to be decided "regarding the offer by [Jones] or the acceptance of the offer by State Farm . . . , or the legal consequences thereof." Travelers' first enumeration is that the court erred in concluding as a matter of law that a binding settlement agreement did not exist between Nelson and Jones and in granting summary judgment to Jones on this issue. They are considered together.

Since summary judgment was granted to Jones, we consider the evidence with all inferences in favor of Nelson and Travelers, opponents of that judgment. *Eiberger v. West*, 247 Ga. 767 (a) (1) (281 SE2d 148) (1981).

On September 22, 1994, State Farm's Houlihan responded to Dwyer's August 25 letter as follows: "This letter follows our conversation of earlier today during which I offered as full and final settlement of Mr. Jones' claim, our policy limits of $50,000. Please contact me at your earliest convenience so that we may discuss this offer."

Houlihan was deposed and stated that, prior to sending this letter, he and Dwyer had talked by telephone on September 22. During the deposition, Houlihan stated the following regarding that conversation: "If I was going to pay the policy limits without getting a release, you wouldn't be protecting your insured." "I did not have any knowledge that [Jones] would not execute a full release." "[W]hen I got to talk to [Dwyer], I said I've been provided authority to settle the claim with $50,000. And I said I'm prepared to offer that to you. And he said, okay. He said, I need to talk to Travelers to see what they are going to do regarding the UM portion of the claim." "[M]y letter to him dated September 22nd following up that conversation has a line in it, please call me to discuss this offer, which I have interpreted as meaning that I needed the information necessary to know how to make out the checks in order to be able to forward them. And that's why they were never forwarded, never issued, never put together."

Regarding a release, the following testimony was given: "Q. And at no time did you discuss with me [Dwyer] a release, correct? A. Best of my knowledge, no. Q. And at no time did I tell you that Mr. Jones would be willing to sign a release, did I? A. I don't believe, here again, using of the words, I don't necessarily believe that you said he would or would not sign it. . . . Q. And you understand that [Travelers] was very much an issue with me as you and I terminated our conversa-

tion? A. I understand now that — I understand the magnificence of now what kind of issue it was. At the time of the conversation [September 22], I came away believing that it was a matter of talking to Travelers to see what they needed to do in order to resolve it and that it was something that could be resolved. Q. But that something had to be done with Travelers before it would be resolved? A. Something had to be done with Travelers, right."

"A contract is an agreement between two or more parties for the doing or not doing of some specified thing." OCGA § 13-1-1.

Here, Jones had demanded from Nelson and his insurer the payment of the limits of Nelson's policy. In response, Houlihan had received authority to pay the limits of that policy in settlement of Jones' claim. Houlihan then called Jones' counsel and accepted his offer. At this point, there was a contract to settle Jones' claim against Nelson for $50,000. OCGA § 13-3-1. There is no reference in the letter sent by Jones to any reservations of claims against other insurance companies pursuant to OCGA § 33-24-41.1. Had such a reservation been intended to be part of the written offer, it should have been included. See *Darby v. Mathis*, 212 Ga. App. 444 (1) (441 SE2d 905) (1994); *Crim v. Jones*, 204 Ga. App. 289 (419 SE2d 130) (1992).

However, during the continued telephone conversation between Houlihan and Dwyer, it is undisputed that Houlihan became aware of Jones' UM coverage with Travelers and was advised by Dwyer that he needed, before finalizing the settlement with Nelson, to continue discussions with Travelers.

Houlihan acknowledged that, at this point, he understood that Travelers' UM claim was not to be released by any deal Jones made with State Farm and, further, that he was aware that there could be a release of State Farm without releasing Travelers.

For purposes of this opinion, we assume, without deciding, that acceptance by a tortfeasor's insurer of an injured party's demand made pursuant to *Holt* contains, as an implied term, a full and final release of all claims. Here, there still remains a factual question as to whether the parties had mutually departed from this agreement in order to allow Jones to continue and complete his negotiations with Travelers before finalizing the settlement with Nelson. OCGA § 13-4-4; *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 11 (195 SE2d 417) (1973); *Cho v. South Atlanta Assoc.*, 200 Ga. App. 737, 739 (2) (409 SE2d 674) (1991).

Therefore, the trial court's grant of summary judgment to Jones on this issue was error. Because of the remaining factual issues, denial of Nelson's and Travelers' motions for summary judgment was not error.

4. Considering our decision in Division 3, it was also error for the trial court to impose attorney fees on Nelson.

*Judgments affirmed in part and reversed in part. Blackburn, J., concurs. McMurray, P. J., concurs in the judgment only.*

DECIDED MARCH 14, 1996.

*Greer, Klosik & Daugherty, John F. Daugherty, Leah R. Simpson, Robert J. McCune,* for appellant (case no. A95A2603).
*Swift, Currie, McGhee & Hiers, James B. Hiers, Jr., Lisa S. Siegel, John W. Campbell,* for appellant (case no. A95A2604).
*Dwyer & White, J. Matthew Dwyer, Jr., Carmen Smith,* for appellee.